**Samuel Harold COOPER, Relator,**

v.

**The STATE of Texas et al., Respondents.**

No. A–11109.

Supreme Court of Texas.

March 16, 1966.

Sam Houston Clinton, Jr., Austin, for relator.

Jules Damiani, Jr., Dist. Atty., Galveston, for respondents.

NORVELL, Justice.

This is an original action for mandamus filed in this Court under Article 5, § 3 of the Texas Constitution, Vernon's Ann.St. and Article 1734, Vernon's Ann.Tex.Stats. Although this proceeding relates to a criminal cause now pending in the District Court of Galveston County, Texas, jurisdiction to issue the writ of mandamus is vested in this Court rather than in the Court of Criminal Appeals. See Appellate Procedure in Texas, § 1.4. The relator, Samuel Harold Cooper, stands charged with unlawfully possessing marihuana in Cause No. 29,067 on the docket of the District Court of Galveston County, 56th Judicial District, and he now contends that he is entitled to an order commanding that the State of Texas bring him speedily to trial upon such charge or dismiss the cause. He invokes Article 1, § 10 [1] of the Texas Constitution and the Sixth and Fourteenth Amendments to the Constitution of the United States, and names as respondents the State of Texas, County of Galveston, W. E. Stone, Judge of the 56th District Court, and Jules Damiani, Jr., Criminal District Attorney of Galveston County.

Relator is an indigent federal prisoner. The state marihuana indictment was returned and filed on May 24, 1962 and relator admitted to bail. On February 20, 1963, he was convicted on a narcotics charge and sentenced to a term of five years by the United States District Court for the Western District of Texas. At present he is incarcerated in the Federal Correctional Institution at Texarkana, Texas, and is thus in the custody of the United States through its Department of Justice and Bureau of Prisons.

As a predicate for the present action, the relator filed a petition for a writ of habeas

---

1. Article 1, § 10 of the Texas Constitution in part provides:

"In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury. * * *"

corpus ad prosequendum in the 56th District Court in which he prayed that he be brought to Galveston and tried on the marihuana charge or that said charge be dismissed. His petition was denied by the respondent, Hon. W. E. Stone, Judge of said court. Had this writ been granted, it would have been necessary for the State to request the federal authorities to produce relator before the state court.

The stipulation of facts and exhibits filed herein indicate that should the state authorities elect or be ordered to proceed with the prosecution of the state marihuana charge and comply with certain conditions specified by the federal prison authorities, the relator would be produced for trial in the state court. These conditions are prescribed in a bulletin issued on October 9, 1963 by the Bureau of Prisons. The directive among other things prescribes that, if a state or other local non-federal jurisdiction desires that a federal prisoner be produced in a non-federal court in connection with a criminal prosecution, the proper officer of the state must make an application therefor to the Director of the Bureau of Prisons. Various conditions are prescribed relating to the custody, care, shelter and subsistence of the federal prisoner. Deputy federal marshalls must at all times accompany the prisoner and retain custody of him while away from the federal penal institution. The directive then concludes:

"Unless specifically modified by the Director, Bureau of Prisons, these conditions must be accepted by the applicant before an inmate in the custody of the Federal Government may be produced upon a writ of habeas corpus.

"It is the responsibility of the Marshal to see that the proper writ of habeas corpus * * * ad prosequendum, in the case of a defendant in a criminal proceeding, should be presented to him as his authority and that satisfactory arrangements for payment of expenses are made before the prisoner is actually removed to the place of trial."

In State ex rel. Moreau v. Bond, District Judge, 114 Tex. 468, 271 S.W. 379 (1925), this Court held that when a prisoner was confined in a Texas penal institution, a plea that such prisoner was "wholly without and beyond the jurisdiction of the district court * * * to try him for another offense" was not in law a sufficient plea to bar a prisoner's right to a speedy trial under the provisions of Article 1, § 10 of the Texas Constitution. However, despite some cases holding to the contrary, it appears that a different rule is applicable when two separate sovereignties are involved.

In Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879 (1922), it was recognized that, "We live in the jurisdiction of two sovereignties" and under the doctrine of comity, the Attorney General of the United States was vested with discretion to render a federal prisoner available to a state court for trial upon a state offense under such conditions as he might prescribe. Obviously a state does not possess the power to control the Attorney General's discretion and compel him to produce a federal prisoner before a state court for trial. The problem dissolves into one of sovereignty and not a mere squabble over conditions presently prescribed or which may be hereafter prescribed by the Department of Justice relating to the production of a federal prisoner before a state court.

This was clearly pointed out in the leading case of Ex parte Schechtel, 103 Colo. 77, 82 P.2d 762, 118 A.L.R. 1032 (1938). The Colorado Court recognized the general rule that a "sovereign may not deny an accused person a speedy trial by reason of the circumstance that he is incarcerated in one of that sovereign's penal institutions under a prior conviction and sentence in a court of that sovereign".[2] However, it was

---

2. This is in accordance with the holding of the Moreau case. See, 118 A.L.R. 1037.

held that a distinction must be recognized when the prisoner is held by another sovereignty. In speaking directly to this point, the Colorado Court in *Schechtel* said:

"Obviously, a very different situation exists where, as here, the United States has first acquired jurisdiction and custody of the petitioner and at the time the state indictment was returned, as well as during the period of delay, the federal government, and not the state of Colorado, has had him under exclusive control. · Under such circumstances it would seem certain that unless, during the term of petitioner's federal sentence, an unqualified and absolute right reposed in the Colorado authorities to require the United States to permit the presence of the petitioner for trial before the Colorado court in which the indictment is pending, and without which presence no trial could be held, that the prosecuting officers of the state could not be charged with unreasonable delay in failing to proceed with the trial on the state indictment."

This distinction was again clearly pointed out by an eminent panel of judges of the Tenth Circuit in McCary v. State of Kansas, 281 F.2d 185 (1960, cert. denied, 364 U.S. 850, 81 S.Ct. 94, 5 L.Ed.2d 73), wherein it was said:

"It is well settled that the failure of a state to bring a defendant to trial on a state charge during the period of his confinement in a federal penal institution on a federal charge will not support a claim of denial of a speedy trial by the state court. The reason for the rule is that he is in custody in the federal penal institution because of his own wrongdoing and *is beyond the custody and control of the state court,* even though the federal government might grant the request of the state for custody of the defendant for the purpose of trial on the state charge." (Emphasis added.)

The question is one of power and authority and is in no way dependent upon how or in what manner the federal sovereignty may proceed in a discretionary way under the doctrine of comity. A contrary view not only seems obnoxious of one's understanding of the nature of sovereignty, but apparently embraces a theoretical anomaly. If the United States Department of Justice refuses under any circumstance to allow a prisoner to leave a federal penitentiary for the purpose of trial in a state court, the prisoner is not deprived of his right to a speedy trial by a state, but, if the Department is willing to allow the prisoner to leave the penitentiary under certain stated conditions, then the state if it does not accept such conditions and bring the prisoner to trial does violate the prisoner's constitutional rights. This position seems patently unsound. If a state regards the federal charge for guard, transportation or other services as exorbitant, should a determination of excessiveness be taken as the test of one's constitutional rights? Obviously not. The true test should be the power and authority of the state unaided by any waiver, permission or act of grace of any other authority. This seems to be the majority rule and we adhere to it. Frankel v. Woodrough, 10 F.2d 360, 361 (8th Cir. 1926), Nolan v. United States, 163 F.2d 768 (8th Cir. 1947, cert. den., 333 U.S. 846, 68 S.Ct. 649, 92 L.Ed. 1130), Re Yager's Petition, 138 F.Supp. 717 (Dist.Ct.Ky.1956), United States v. Jackson, 134 F.Supp. 872 (Dist.Ct. Ky.1955), Lee v. State, 185 Ark. 253, 47 S.W.2d 11 (1932), Raine v. State, 143 Tenn. 168, 226 S.W. 189 (1920), State v. Hall, 266 Minn. 74, 123 N.W.2d 116 (1963), State of Minnesota v. Larkin, 256 Minn. 314, 98 N.W.2d 70 (1959), Application of Melton, 342 P.2d 571 (Okl.Cr.App.1959), Petition of Norman, 184 A.2d 601 (Del.Sup.1962), Kirby v. State, 222 Md. 421, 160 A.2d 786 (1960), cert. den., 364 U.S. 850, 81 S.Ct. 95, 5 L.Ed.2d 74.

For the reasons stated, we deny relator's prayer that the Hon. W. E. Stone, Judge of the 56th District Court, be ordered to issue the writ of habeas corpus ad prosequendum and proceed to trial in said Cause No. 29,-

067 on the docket of said 56th District Court, or, in the alternative, dismiss said cause.

Petition for mandamus denied.

HAMILTON, Justice (dissenting).

I respectfully dissent. The court recognizes that the law in this state as well as the majority rule in most other states is that an accused must be afforded a speedy trial after indictment even though he is incarcerated in that same sovereign's penal institution under a prior conviction and sentence. State ex rel. Moreau v. Bond, 114 Tex. 468, 271 S.W. 379 (1925); 118 A.L.R. 1037. Moreover, this court has held in Wilson v. Bowman, 381 S.W.2d 320 (Tex. Sup.1964) that both the court and the prosecution are under a *positive* duty to prevent unreasonable delay in bringing an accused to trial and when the court has the power to act it must do so.

However, the court holds that a different rule is applicable here because two separate sovereignties are involved. It holds in effect that even though the state in the instant case has the power to afford the accused a speedy trial, it is under no duty to do so, because it has derived its power to afford a speeedy trial from waiver, permission or act of grace of the federal sovereignty. The writer is of the opinion that the more reasonable rule and the one more in harmony with the constitutional purpose, both state and federal, providing for or insuring a speedy trial for the accused, is that where the state has the power to afford the accused a speedy trial it is under a duty to do so. People v. Piscitello, 7 N.Y.2d 387, 198 N.Y.S.2d 273, 165 N.E.2d 849 (1960); State v. Patton, 76 N.J.Super. 353, 184 A.2d 655, affirmed 42 N.J. 323, 200 A.2d 493 (1964); Commonwealth v. McGrath, 348 Mass. 748, 205 N.E.2d 710 (1965); State ex rel. Fredenberg v. Byrne, 20 Wis.2d 504, 123 N.W.2d 305 (1963); Taylor v. United States, 99 U.S.App.D.C. 183, 238 F.2d 259, 261 (1956).

Under the undisputed facts of this case the state has the power to afford the relator a speedy trial, and no valid excuse has been offered as to why that power should not be exercised. This is especially true since the state is not required to surrender any of its sovereignty in order to give the relator the relief requested.

The relief prayed for in the relator's writ of mandamus should be granted.

CALVERT, C. J., and SMITH and GREENHILL, JJ., join in this dissent.